A total of six cases today, three of which are being submitted on the briefs, namely Appeal No. 05-3253, Vons v. Office of Personnel Management, Appeal No. 05-3323, Freeman v. Merit System Protection Board, and Appeal No. 06-3083, Lopez v. Merit System Protection Board. First on the argument calendar is Appeal No. 05-1398, Hakim v. Cannon Avent Group. Mr. Cohen, welcome. Good morning. Please proceed. Good morning, Your Honors. May it please the Court, my name is Morris E. Cohen, and I represent the plaintiff appellant in this matter, Mr. Nuri E. Hakim. And you prosecuted the patent? Yes, Your Honor. There are two rulings before the Court today. They're both on summary judgment. Both of them were with respect to two different patents, the 931 patent and the 620 patent. The District Court ruled in its decision below that the precise words of the claims do not matter, and improperly decided disputed issues of material fact on summary judgment. I'd like to begin and spend about three minutes on the 931 patent and about three minutes on the 620 patent. The 931 patent relates to an invention, both of them in fact, to a non-spell cup. The inventions in the 931 patent relate to an opening, such as a hole or slit, which rests against a blocking element. This combination prevents fluid from flowing through the opening and through the cup. The blocking element effectively blocks fluid flow. Do we have to accept your assertion for you to prevail that the adjudicators below refuse to construe claim terms? Well, Your Honor, it's obviously the duty of this Court to construe the claim terms de novo. So even if the Court below did or did not, it's still... I thought I heard you say that the judges below refuse to construe the claim terms of the 931 patent. Yes, Your Honor, that's correct. It looked to me like the claim terms were construed, even though there was some language earlier in the opinion to the effect that it might not be important to construe them. Well, actually, what the Court below stated, for example, with respect to the 620 patent, there was... No, no, 931. Let's have a little order and clarity here. Sure. With respect to the 931 patent, the Court specifically stated it is not necessary to interpret the word opening. And instead what it did was it construed the prosecution history. By doing so, without grounding itself in the words of the text, it improperly entered decisions without following bedrock patent law that the words of the claims... What was the misconstruction? The misconstruction is that the district court did not distinguish between opening and slit and discuss whether the issued claims... What words were misconstructions? Opening. It was never... It was never construed. The Court, in fact, said when we took the position that an opening includes any whole, such as stated in the specification, that it includes any form of a whole. The district court stated, and the defendants take the position that it covers a slit. Stay with me. Sure. I want to know what words of the judge misconstrued a claim limitation involving the aperture. Right. The term opening. Specifically, we say it includes any whole and the Court never reached that decision. It said... It can't be a misconstruction if he didn't define it. Right. That's the problem. There's no definition of the claim term. I thought you said there was an erroneous definition of a claim term that drove the outcome. Well, no. The Court failed to construe the precise words of the claim. That was my point. It did not look at the precise words of the claim. Instead, it looked at the gist of the invention, the gist of the prosecution history. It never actually looked at the precise words used in the claim to determine what the scope of those words were. And by doing so, by looking at the prosecution history in a very general sense, without grounding itself in text and claim language, it improperly read the limitations into the claim. Well, what's the limitation that was improperly read into the claim? Sure. The Court below ruled that the term opening in the issued claims is limited to a slit or slit-like structure based on prosecution history. We dispute that. We say based upon specification and various other principles of interpretation, namely six separate principles of interpretation, the term opening includes any form of a whole. As this Court, for example, stated in Phillips, the specifications... Don't waste your time telling us things we already know. Sure. Specifically, in the prosecution, the claims as presented, there were some claims that said opening and some claims that said slit. There were then many remarks presented to the slit embodiment, to the advantages of a slit. After that, Mr. Hakim came back to the Patent Office and brought in all of his claims and took the claims, even those that said slit, and brought them back to opening saying that he was expanding the scope of the claims. You don't have to defend your prosecution of the case. We're just trying to find out if there was a claim construction error below. We say there is, in the sense that the Court is importing limitations from the prosecution history into the claims, limitations found in early prosecution history, which were removed in later prosecutions. What was the ground of granting summary judgment of non-infringement? The ground for non-infringement is that based upon the Court's belief that an opening is limited to something that seals against itself, namely a slit. Since the defendant's product does not seal against itself, it's just a hole, there's no infringement. That was the Court's position. Our position is an opening includes a slit. I thought that the Court's position was that there had to be some effect against spillage from the opening, and some further effect when the elastomeric material is pressed against the blocking element. Well, the Court stated, essentially, that it was requiring two mechanisms. One mechanism is provided by the slit, but it's not provided by a hole. And the Court, therefore, was relying upon the language in the prosecution history about the slit. However, later that slit was removed. And as, for example, Your Honor and Judge Rader had said in the surgical laser case, it's improper for a court to import limitations back into a claim after those limitations were removed during prosecution. And Your Honor, Judge Newman held the same until electronics. Well, we know about the past cases. The important thing is what happened in this case. In this case, the patentee, Mr. Hucking, specifically removed the slit limitation from the claims. And he said he was broadening the claims. Once he did that, any remarks about that slit really had no value any longer because he was now relying on a broader claim. Defendants want to import all those remarks into the claim. Did the remarks precede the amendment that removed the word slit and substituted a broader word? Yes. The remarks stated that Mr. Hucking was expanding the scope from opening to slit, I'm sorry, from slit to opening. And it also stated that his invention is an opening that moves off the blocking element. And as I said, opening was clearly defined in the specifications, including any hole. There wasn't any further prosecution after that statement was made. The claims had already been allowed, isn't that right? That is correct. However, if the patent examiner had believed that the slit limitation was essential for patentability, he would not have allowed the claims at that point, nor would he have allowed the opening. Why couldn't he have believed that there could be any kind of opening that would retard spillage? So not necessarily limited to a very narrow slit, but also not maybe including a very large round hole. For a few reasons, one of which is the specification clearly defined an opening as being any hole. Second, the plain meaning of opening includes any form of a hole. And third, the patent office, when it examines patent applications, applies the principle of broadest reasonable interpretation. It will interpret a limitation with the broadest scope possible. And if the patentee doesn't want that scope, then it's up to the patentee to reduce it. So if self-sealing was a limitation that was required by the examiner, the examiner would have said put that limitation into the claim. Maybe self-sealing is too strong. Maybe it doesn't have to seal 100% by itself without the blocking element, but maybe it has to have some material effect to impede leakage. Well, that still would conflict with the patent office's principles. The patent office always construes the claims as broadly as possible and leaves it to the applicant to narrow the claim term. Furthermore, the blocking element was a feature that was not in any of the prior art of record. And it was the feature that, in all of the claims that were allowed, was present both before and afterwards. None of the art that was cited by the examiner, including the blocking element, that's why a blocking element sitting against a slit, whether it was a hole or slit or any other type of opening, was patentable because no art showed anything sitting against the blocking element. That's why it was patentable both before and afterwards, and why after Mr. Hakim brought it up... Are you asking us to erase the discussion distinguishing several prior art references on the grounds, I'm not asking you to agree with this characterization, but it's the best I can do to summarize it, that the claimed invention involved using both the leakage-retarding feature of the hole or slit and the liquid-retarding feature of the membrane being pressed against the blocking element. I'm asking that for the dependent claims that were presented to a slit later on, that limitation should be present. However, to the independent claims which do not have that limitation and which were brought into any opening, that limitation should not be present. But the language that you submitted to the patent office that I'm referring to didn't make any distinction among the claims. It seemed to say the invention itself required two forms of leakage impedance, one from the shape or dimension and material of the slit or hole, and the other from the use of the blocking element to close off any remaining potential to leak. And now you seem to be saying, well, that didn't apply to the independent claims, that only applied to the dependent claims? No, what I'm saying is that, more clearly, what I'm saying is that those remarks applied to claims that had a slit in them. They do not apply to claims that just have an opening, because opening can be any hole. And later, when it was expanded to opening, and the patent office still allowed it, it showed that they weren't concerned with the slit issue. If they were, they wouldn't have allowed it. Do you want to save your remaining rebuttal time? Yes, I do. Thank you, Your Honor. Thank you. Mr. Calvaruso? Before you answer Mr. Morris's, or pardon, Mr. Cohen's, arguments under 931, I'd like to ask you, with respect to the other patent, I think the 920 is the number, how we could possibly affirm an invalidity summary judgment in the absence of any construction of the dispositive claim limitations? Why isn't that, per se, a reversible error? Because there was construction. Where do we find that? One claim determined dispute was closed position. As I recall, there were four in dispute, and three he never defined at all, anywhere I could see. There were really two, Your Honor. It was closed position, and invert. Begins to invert. I thought there was agreement that there were four material terms, only one of which he even purported to define. Well, he certainly defined the terms, and I'm happy to point you to that construction. For example, closed position. Well, I don't want you to use up all your time. I guess we can just look back at it. My recollection was that there were terms that both sides agreed were material, which he declined to define, and then he went on to invalidate an entire patent and all its claims, having never construed critical terms. Even if he did construe the critical terms, or enough of them, how can we uphold invalidation of all the claims of a patent when there was no analysis, claim by claim? There was an analysis. Claim by claim? The court grouped claims together, as was proper. This court has said it's proper to group claims together in an invalidity analysis where, to resolve the invalidity issue, you're dealing with the same invalidity issues. Mr. Hakim admits that in his brief, page 48 of his brief. In arguing against Abbott's invalidity position, Hakim himself grouped claims together. There were certain terms, like closed position, that appeared in all of the claims. The court construed that term and interpreted the claims together because there was no need to go through each one. Where Hakim selected individual claims to argue as claim 5 or claim 12, the court specifically addressed them and rejected the arguments of invalidity. Now, let me ask you one other procedural question. As I recall, in this case with regard to both patents, the magistrate judge did all the preliminary work and then filed a report, and there were objections to the report filed by the other side, and the district judge adopted the report entirely as to both patents with no change and, as I recall, with no discussion at all of why the objections were irrelevant or wrong. Now, normally when there are objections to a magistrate judge's report, the district judge explains why he's rejecting them. Am I correct that here no explanation at all was given? Yes, Your Honor. Now, is that defensible? Could that even be considered error per se to refuse to explain why the objections are being overruled? I don't believe so, Your Honor. It wasn't simply a rubber stamp. The court did talk about a no-overstamp. There's no opinion here, right? There's a judgment order with boilerplate language about how I've considered everything relevant and you lose. But that's not a reasoned decision. That doesn't tell anybody what was wrong with each objection that makes it rejectable. How can we review what the district judge did when he didn't explain what he did? Because he adopted in total what the magistrate said and all the reasons for refusing to accept the plaintiff's objections were set out there. There was no reason to say it again, to repeat the same exact thing. All the reasons were in exquisite detail put in the magistrate's report and recommendation. At least at some point the decision relies on a self-sealing opening. Where do you find the word self-sealing in these patent claims? You don't see it in the self-sealing. So automatically we have something that's been imported from somewhere. Is there a justification for that import and what is it? Absolutely, your honor. Let's look at what happened. We're talking about the 620 patent, I mean the 931 patent, the self-sealing. What happened there was all the claims were rejected on the basis of prior art anticipation. Two of the patents showed... And yet there are differences, aren't there? This is the first one to combine both a self-sealing feature and a blocking element at the same time, right? As far as I can see, yes. So anticipation is off the board. There can't be anticipation. There's nothing identical in the prior art. We're not talking about anticipation with respect to the 931 patent. But now show me where self-sealing comes from. Well, it's what these... The patentee argued, distinguished his patent invention over the prior art on a sole basis that there were two separate mechanisms that blocked fluid flow. And he said it was a flexible valve member having a slit and having a blocking element against the slit to provide a belt and suspenders dual seal action. He confirmed the self-sealing nature of the opening, the slit, twice at least. He said the slit sits against the blocking element sealing or blocking off the slit to yet further prevent... And if I look at the prior art, I see that some of the prior art has a blocking element. Some of the prior art has a flexible self-sealing aperture of some kind. But never do I see both of those together. Now, why isn't he appropriately distinguishing himself by saying I am the first to bring those two together and the district court never picks up on that. The district court says, well, I see all the elements in the prior art. That's good enough for me. Must mean self-sealing. There's no infringement. He misread the prosecution history, didn't he? Well, show me how he did it right. Because what the patentee said was none of the references cited in the office action, teacher suggested no spill mechanism having a slit sitting against the blocking element such as recited in all the pending claims. The patentee equated the term opening, which, by the way, was in 13 of the 19 pending claims, said opening. And he said none of the references cited show or suggest a no spill mechanism having a slit sitting against the blocking element such as recited in all the pending claims. And he's right. The two separate mechanisms work together not independently. The opening was not self-sealing. The opening only worked when it was put together with a blocking element. That's the mistake in what the district court did. You'll have to show me why not. Because the patentee characterizes The slit means self-sealing? I'll read to you exactly what he said, Your Honor. He said the slit sits against the blocking element sealing or blocking off the slit Meaning when you put both of them together? To prevent the passage of liquid through the valve. He's saying that the flexible valve member with the slit is blocking in addition to the blocking element hitting it. He also said Do you get that from the word further? I do, Your Honor. I also He said by providing both the elastic member with a slit and a blocking element a sealing mechanism is provided that reduces spillage beyond that of either mechanism alone. That doesn't make sense unless the flexible valve member with the slit prevents some fluid flow. To yet further prevent means they work together. It means that one is preventing and then the other one is preventing in addition. I don't think so. In fact, that's how he distinguished the Robbins reference. He said it was an additional closing element. Well, if we disagree with you on that, this all goes back, right? If we don't read, if we read the prosecution history as I suggest then the district court made an error, didn't it? You put everything on further meaning separate different. In addition to? Which it need not mean. It may mean simply that they work together to further prevent the leakage. Further prevent from what? Leakage. From what? Normally we ask the questions. You're right. Sorry. I think it's crystal clear with all due respect that he's talking about two separate sealing mechanisms in play here. I think Judge Michelle described it very well. There's some blockage happening with the flexible valve member and then when the blocking element comes against it you have additional. That's the issue. That's the issue. Whether they have to be separately sealing or only sealing when working in tandem. Then if they're working in tandem and that's it you have one sealing mechanism not two. Just like in the prior art when you just had a slit that's one sealing mechanism. What are we to make of the fact that the prosecution history language uses the term slit but some of the claims were amended to use a broader word than slit. When the patentee was arguing distinguishing his invention over the prior art based on this two sealing mechanisms. Thirteen of the nineteen claims said opening not slit. When he wrapped up he said none of the references cited in the office action. Teachers suggest such a no spill mechanism having a slit sitting against the blocking element such as recited in all the pending claims. He equated opening with a slit with slit like characteristic. You're not responding to my question. You're saying that there's a way to read this language as equating all shaped openings with slits but at the same time as I understand it he removed the word slit from some of the claims and substituted a broader word which would seem to negate the reading that you're suggesting. So I'm asking you how do you reconcile the amendment omitting slit and substituting a broader word with your reading of the rest of that exchange. Because in that exchange thirteen of the nineteen claims said opening. Whatever he said about the invention requiring the two sealing mechanisms applied to opening. In the later amendment he amended two claims to substitute the word slit for opening. He didn't change the meaning of opening. He didn't withdraw his two separate sealing mechanisms. In fact he specifically relied on the arguments he made before. He equated it opening with a slit having slit like characteristics. He did not broaden by changing in two claims slit to opening when opening was there in thirteen of the nineteen claims in the previous amendment. The problem I have with what you're saying is that it's factually true that the cited prior art references don't have a slit against a blocker. But you are saying well okay that may be accurate but by saying that he meant to redefine opening to be limited to those openings that qualify as slits. And it seems to me that's a big stretch. No pun intended I assume. Your honor, but if you look at Belcastro, Belcastro has a flexible valve member that is resting on the blocking element. When suction is applied the edges of the flexible valve member come off the blocking element so liquid can pass through. When suction stops it comes down and blocks fluid. There are two components a flexible valve member and the blocking element but not two mechanisms. One mechanism is the blocking element against the flexible valve member. The point I'm trying to make is that if a patentee is redefining claim terms to have a different narrower meaning than they otherwise would have, our case law suggests he can only be held to do so if he does it quite explicitly and quite deliberately. I don't see much evidence in this language that we're debating that there was an attempt to abandon an ordinary meaning of the word opening to redefine opening to mean only those openings that qualify as slit. But that seems to be exactly what you're asking us to conclude. Not just a slit because he had other things that worked as slits that provided that other sealing mechanism like a T-shaped slot a cross shape. Those were included in that discussion and the district court held that opening would include that but those were self-sealing openings. And this case is very much like the situation that this court faced in the C-chain versus C-court case. There, because the patentee distinguished his invention solely on the basis of a particular feature this court held that all the claims had to be interpreted as including that feature even though some didn't specify it.  said a network communication interconnection, other claims said a point-to-point. That seems far removed from the language and technology here. The technology, yes. The argument, no. Alright. The patentee gave us a sole basis. Time has expired. Mr. Cohen. Thank you, Your Honor. Thank you. Your Honor. Your Honor, with respect to the 620 patent, the district court did not issue the claim specifically stating that the precise words in the claims don't matter. We pointed to the word invert and we said invert is a very specific limitation it has importance, it distinguishes over the art, and the court said it doesn't matter whether you say invert or move or any other word it doesn't matter, showing that the court did not appreciate its role in conducting claim construction and did not properly conduct claim construction. With respect to his remarks, Pelley's remarks regarding the slit sitting against the blocking element as shown in all of the pending claims, what the patentee was stating is that no reference shows sitting against a blocking element as shown in all of the pending claims. The sitting against the blocking element was in every single claim of record at that point. A slit was not in every claim. Some of the claims had opening, some of the claims had slit. But it is clear that sitting against a blocking element was in every claim. In fact, if you look for example at the end of the October Amendment the end of the October Amendment says this language, a slit sitting against a blocking element as recited in the claims, and then says pending claim 3, and it gives as an example. If you look at claim 3, pending claim 3 pending claim 3 does not say slit, it says an opening and it says the resting against the blocking element. It was the resting against the blocking element, an opening resting against the blocking element, which was the feature which was essential for patentability and which was the main point which is why he broadened later on. Mr. Cohen, do you think we're precluded from assessing based on record evidence the possible obviousness of this invention? Well, Your Honor, the obviousness question is one of fact based upon various determinations and none of those issues ever came before the district court and they're not before the court today. There are secondary considerations of various other issues that were never presented by us or the other side. We just, we never got to. I thought the other side had started out arguing obviousness and anticipation and narrowed their attack later. Well, they argued based upon various references that are before the court and there are various legal issues that the court never addressed various references the court never addressed it never really got to that. The record is too incomplete to really get to that issue as presented by the district court. I'd also like to mention that the defendants have this position, basically a penumbra, that the remarks about a slit create a penumbra which affects all of the claims regardless of what language is in the claims later is issued and if that would be the law then it would be chaotic. The future cases that would start looking at remarks regardless of limitations in the claims and regardless of actual broadening amendments and the way the examiner looks at these things people will start pulling remarks out and will start to basically use those remarks to create limitations like self-sealing that aren't actually present If you prevail and we send this back, presumably there'll be trials on infringement and validity with respect to the 620 patent and a trial on infringement at least on the 631 and then there's the likelihood that there'll be appeals back here by one or both sides and we'll go through this all over again What is the total amount of dollars at stake here that would justify all these lawyer fees? Well, it is a large market I don't know if I can state the amount because of the protective order entered by the parties but it is a very large market both internationally and domestically, which we're obviously only dealing with the domestic issues, but it is significant I can maybe say millions of dollars without getting specific I don't know if I'm permitted by the protective order Millions of dollars of potential royalties or lost profits damages? There's a reasonable royalty claim there's a lost profits claim, etc. Aren't we approaching millions of dollars in attorney's fees at this point? Possibly, but it pales in connection with what the damages are Is this a case that ought to be settled by lawyers dealing with realities and risks of litigation? Well, that's a matter for the parties to consider. Of course, the district court's decision makes it difficult to enter into any settlement because we submit that the district court failed to properly fulfill its role I'm asking a question on the supposition that we might send it back and then I'm just asking how much more delay and how much more wasted time at the district court and how much more wasted time here? Is there some alternative to all these attorney's fees and delays and so forth? It's just a thought for you to consider. We thank you both. The case is taken under advisement.